**EXHIBIT B**

Case 1:05-cv-01052-JDB    Document 2-3    Filed 08/04/2005    Page 1 of 19

IL 0066

# LABOR AGREEMENT

between

## CERAMIC TILE CONTRACTORS ASSOCIATION OF CHICAGO

and the

## CERAMIC TILE LAYERS AND TERRAZZO WORKERS UNION LOCAL NO. 67

OF THE

## INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTSMEN



B.A.C.

**Effective:**
June 1, 2000 through May 31, 2004

RECEIVED DEC 19 2000

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| ARTICLE I: | WORK COVERED BY THIS AGREEMENT | 1 |
| ARTICLE II: | BARGAINING UNIT RECOGNITION - UNION SECURITY | 2 |
| ARTICLE III: | WAGES AND FRINGE BENEFITS | 4 |
| ARTICLE IV: | DUES CHECK OFF | 9 |
| ARTICLE V: | HOURS OF LABOR AND PAYMENT OF WAGES | 10 |
| ARTICLE VI: | PAYDAY | 12 |
| ARTICLE VII: | TRAVEL AND PARKING ALLOWANCE | 13 |
| ARTICLE VIII: | WORKING RULES | 14 |
| ARTICLE IX: | FOREMAN | 18 |
| ARTICLE X: | UNION STEWARD | 18 |
| ARTICLE XI: | APPRENTICES | 19 |
| ARTICLE XII: | BONDS | 20 |
| ARTICLE XIII: | SAFETY | 22 |
| ARTICLE XIV: | HIRING | 22 |
| ARTICLE XV: | MISCELLANEOUS PROVISIONS | 23 |
| ARTICLE XVI: | SAVINGS CLAUSE | 23 |
| ARTICLE XVII: | SUBCONTRACTING | 23 |
| ARTICLE XVIII: | PRESERVATION OF WORK | 24 |
| ARTICLE XIX: | NON-DISCRIMINATION | 25 |
| ARTICLE XX: | SUBLETTING | 25 |
| ARTICLE XXI: | MOST FAVORED NATIONS CLAUSE | 25 |
| ARTICLE XXII: | SETTLEMENT OF DISPUTES | 26 |
| ARTICLE XXIII: | COMPENSATION OF JOINT ARBITRATION MEMBERS | 28 |

LABOR AGREEMENT
BETWEEN
CERAMIC TILE CONTRACTORS ASSOCIATION OF CHI-
CAGO
AND THE
CERAMIC TILE LAYERS UNION LOCAL #67
OF THE
INTERNATIONAL UNION OF BRICKLAYERS
AND ALLIED CRAFTWORKERS

This Agreement is entered into this 1st day of June, 2000, by and between CERAMIC TILE CONTRACTORS ASSOCIATION OF CHICAGO, hereinafter referred to as the "Employer", acting in their own behalf and on behalf of each of their members whose names are set forth in Exhibit "A", attached hereto and forming a part of this Agreement, and any such Employer who may hereafter join the above Association, and CERAMIC TILE LAYERS UNION LOCAL #67, of the INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS (affiliated with the AFL-CIO), hereinafter referred to as the "Union".

This Agreement shall be in full force and effect for four (4) years from June 1, 2000, through May 31, 2004.

NOW THEREFORE, IT IS HEREBY AGREED AS FOLLOWS:

ARTICLE I
WORK COVERED BY THIS AGREEMENT

1.1    This Agreement shall apply to all work within the trade jurisdiction of the Union including but not limited to the following: The setting, slabbing or installation of all classes of tile whether for interior or exterior purposes, all burned, glazed or unglazed products; the setting, sealing and installation of prefabricated tile systems and/or panels; all composition materials, marble tiles, terrazzo tiles, warning detectable tiles, or polyester, cement tiles, Epoxy composite material, corian, pavers, glass, mosaics, fiberglass, and all substitute material, for tile made in tile-like units; all mixtures in tile-like form of cement, metals, plastics and other materials that are made for and intended for use as a finished floor surface, stair treads, promenade roofs, walks, walls, ceilings, swimming pools and all places where tile is used to form a finished interior or exterior surface for practical use, sanitary finish or decorative purposes; the cutting of all material by machinery or tools on the job site; the application of a coat or coats of mortar prepared to proper tolerance to receive tile on floors, walls and ceilings regardless of whether the mortar is wet or dry at the time tile is applied to it; the setting of all tile by adhesion method with organic and/or inorganic thin-bed bonding materials where such bonding materials are applied to the backing surface and/or the back of the tile unit or sheets of tile; the installation of all bathroom, toilet room and washroom accessories built into the tile walls as the walls go up the attachment of bathroom, toilet room and washroom accessories to anchors which have been built into the tile walls as the walls go up; and all work defined as tile layers work by Article II(B) of the Constitution of the Bricklayers and Allied Craftworkers.

1.2    This Agreement shall cover the geographical area of Lake, Kane, Kankakee, Kendall, McHenry, Cook, DuPage, Will and Grundy Counties, Illinois, and such additional territory which the Union shall subsequently acquire by approval of the International Union of Bricklayers and Allied Craftsmen, provided however, as the provisions of paragraph 3.9(e) may apply.

ARTICLE II
BARGAINING UNIT-RECOGNITION - UNION SECURITY

2.1    The bargaining unit shall consist of all Journeypersons, Ceramic Tile Layers, Improvers and Apprentices engaged in work covered by the occupational jurisdiction of the Union as described above.

2.2    Employer and each individual Employer named in Exhibit "A" by and through his collective bargaining agent in response to the Union's claim that it represents an uncoerced majority of each individual Employer's employees, acknowledged and agrees (1) that there is no good faith doubt that the Union has been authorized to and

1

2

in fact does represent such majority of employees in each individual Employer and; (2) that the Union has demonstrated that it is the majority representative of all the employees employed by each individual Employer in that unit covered by this Agreement. Therefore, the Union is hereby recognized by each individual Employer named in Exhibit "A" as the sole and exclusive collective bargaining representative under section 9(a) of the National Labor Relations Act for the employees now and hereafter employed in the bargaining unit of each individual Employer named in Exhibit "A" with respect to wages, hours of work and other terms and conditions of employment.

2.3   All employees now included in the bargaining unit represented by the Union and having membership therein must, during the term hereof, as a condition of employment, maintain their membership in the Union. The Local Union shall be notified by the employer of all other employees performing work covered by this Agreement who then shall, as a condition of employment, become members of the Union at the discretion of the union after the seventh day but not later than the eighth day following the beginning of such employment, or the effective date of this Agreement, whichever is later and they shall maintain such membership as a condition of continued employment.

2.4   Employees who do not become members of the Union as required above, or whose membership is terminated by the Union by reason of the failure of the employee to tender or pay initiation fees and periodic dues uniformly required as a condition of acquiring and retaining membership, shall not be continued in the employ of any Employer under this Agreement.

2.5   Inasmuch as the Union has submitted proof and the Employer is satisfied that the Union represents a majority of it's employees in the bargaining unit described herein, the Employer recognizes the Union as the exclusive collective bargaining agent under Section 9(a) of the National Labor Relations Act for all employees within that bargaining unit, on all present and future job sites within the jurisdiction of the Union, unless and until such time as the Union loses its status as the employee's exclusive representative as a result of an NLRB election requested by the employees. The Employer agrees that it will not request an NLRB election.

3

## ARTICLE III
## WAGES AND FRINGE BENEFITS

3.1   An increase of $1.55 per hour in wages and fringe benefit contributions for the period June 1, 2000, through May 31, 2001, shall be paid as follows: (Fringe Benefit Contributions are payable "per hour worked" or "per hour paid" as hereinafter indicated, and any part of an hour shall be reported and paid as a full hour)

ADDITION:   $3.50 per day or part thereof general expense for the first and second years of this agreement, $4.00 per day or part thereof general expense for the third and fourth years of this agreement.

<u>Wages</u>                                              _27.55_ Per Hour

<u>Fringe Benefit Contributions Payable</u>
Chicago Tile Institute Welfare Plan ............... $_3.00_ Per Hour Worked
Chicago Tile Institute Pension Plan .............. $_1.20_ Per Hour Worked
Chicago Tile Institute Promotion Fund ......... $ _.08_ Per Hour Worked
Ceramic Tile Layers Apprenticeships Trust ........ $_.17_ Per Hour Paid
Bricklayers and Trowel Trades
  International Pension Fund ............................. $_.75_ Per Hour Paid
International Masonry Institute .......................... $_.32_ Per Hour Paid
IL Dist. Council #1 Annuity Fund ..................... $_2.25_ Per Hour Paid

3.2   For work performed during the period June 1, 2001, to May 31, 2002, wages and fringe benefits shall be increased by a total of $1.55_ per hour and shall be allocated between wages and fringe benefit contributions (including a contribution to the Ceramic Tile Layers Apprenticeship Trust) solely at the option of the Union. Notice in writing of the allocation shall be sent to the Employer prior to May 31, 2001.

3.3   For work performed during the period June 1, 2002, to May 31, 2003, wages and fringe benefits shall be increased by a total of $1.56_ per hour and shall be allocated between wages and fringe benefit contributions solely at the option of the Union. Notice in writing of the allocation shall be sent to the Employer prior to May 31, 2002.

3.4 For work performed during the period June 1, 2003 to May

4

31, 2004, wages and fringe benefits shall be increased by a total of $1.58 per hour and shall be allocated between wages and fringe benefit contributions solely at the option of the Union.
Notice in writing of the allocation shall be sent to the Employer prior to May 31, 2003.

3.4(a) The wages of an Apprentice shall be based on hours worked on the following percentage of Journeyman scale:

| | | |
|---|---|---|
| 1st 1000 hours = 50% of Journeyman Scale | (1st level) |
| 2nd 1000 hours = 60% of Journeyman Scale | (2nd level) |
| 3rd 1000 hours = 70% of Journeyman Scale | (3rd level) |
| 4th 1000 hours = 80% of Journeyman Scale | (4th level) |
| 5th 1000 hours = 90% of Journeyman Scale | (5th level) |
| 6th 1000 hours = 95% of Journeyman Scale | (6th level) |

3.5 Welfare, Pension and Apprenticeship Plans

Employer agrees to be bound by the Agreement and Declaration of Trust establishing the Chicago Tile Institute Welfare Plan; Chicago Tile Institute Pension Plan and Ceramic Tile Layers Apprenticeship Trust and any amendments thereto, and designates his representative on the Board of Trustees of such plans such Trustees as are named in said Declaration of Trust, as Employer Trustees, together with their successors and agrees to be bound by all action taken by the Board of Trustees of each said Trust.

3.6 Chicago Tile Institute Promotion Fund is a Trust established, administered and operated only by management representation solely for the purpose of promoting the Ceramic Tile industry. It shall not promote any one Employer, group of Employers or associations of Employers, excepting the National Promotion Fund of the Ceramic Tile Industry. Funds of the Trust shall not be sued for purposes against the Union or any of its agents or to defray any costs of collective bargaining with the Union. Inasmuch as the existence and utilization of such fund should result in the increased need for the Ceramic Tile Layers, thereby providing additional work and the possibility of better wages for Ceramic Tile Layers, the Union agrees to cooperate to the fullest extent in assuring that the contributions agreed to in this Article are in fact made by Employers bound by this Agreement.

3.7 Bricklayers and Trowel International Pension Fund was established under an Agreement and Declaration of Trust dated July 1, 1972. Employer hereby agrees to be bound by and to the said Agreement and Declaration of Trust and Plan, as though he had actually signed the same. Employer hereby irrevocably designates as its representatives on the Board of Trustees, such Trustees, as are now serving or will in the future serve, as Employer Trustees, together with their successors. The Employer further agrees to be bound by all actions taken by the Trustees pursuant to the said Agreement and Declaration of Trust.

3.8 International Masonry Institute was established under an Agreement and Declaration of Trust dated March 14, 1981. Employer hereby agrees to be bound by and to said Agreement and Declaration of Trust as though he had actually signed the same. Employer hereby irrevocably designates as its representatives on the Board of Trustees, such Trustees as are now serving as Employer Trustees, together with their successors. The Employer further agrees to be bound by all actions taken by said Trustees.

3.9 Annuity Fund was established under an Agreement and Declaration of Trust dated June 1, 1990. Employer hereby agrees to be bound by and to said Agreement and Declaration of Trust as though he had actually signed by same. Employer hereby irrevocably designates as its representative on the Board of Trustees, such Trustee as are now serving as Employer Trustees, together with their successors. The Employer further agrees to be bound by all actions taken by said Trustees.

3.10 Payment of Contributions and Delinquencies.

(a) Reports. Payments of contributions as provided in this Article III shall be made upon forms of the Chicago Tile Institute Welfare, Pension and Promotion Fund; the Ceramic Tile Layers Apprenticeship Trust; the Bricklayers and Trowel Trades International Pension Fund, International Masonry Institute, and the Illinois District Council No. 1 Annuity Fund shall be payable on or before the twelfth (12th) day of each month, or as each Trust may from time to time

designate, covering all work performed in the preceding month. Monthly reports are required of Employer irrespective of whether he employed any employees during the preceding month. If no employees were hired, the report shall so state.

(b) <u>Delinquencies</u>. An Employer becomes delinquent upon failure to make timely payments of contributions as it is required in each of the Trusts and Funds described in this Article III. If contributions, in full, are not received by the 12th day of the month worked for the preceding month, Employer shall pay in addition to the aforesaid hourly contributions:

(i) 10% of the amount due as liquidated damages for failure to pay in accordance with this Agreement, it being understood and agreed that damages resulting from such late payments are substantial but are difficult if not impossible to ascertain; additionally liquidated damages for the Illinois District Council #1 Annuity Fund are 5% per month.

(ii) interest on all outstanding balances computed at the prime rate on the day of the delinquency occurred; additionally interest for the Il. D.C. #1 Annuity Fund is computed at the rate of prime plus 1%.

(iii) all reasonable legal, auditor and other charges incurred in effectuating payment; and

(iv) If a contractor is three (3) months delinquent, they may be audited at the contractor's expense.

(v) if a contractor makes payment to a fund with a NSF check, said contractor will be obligated to pay a $25.00 fee to each fund that received the NSF check. Payment is to be made within 15 days of notification.

7

(vi) any and all contractor's who are delinquent 2 (two) months will not receive any members of Local #67 for work. Any and all contractors who are delinquent 2 (two) months will have Local#67 members pulled from their shops.

If delinquency continues for forty-eight (48) hours after written notice of such delinquency is mailed or delivered to the delinquent Employer, the Employer shall be liable for claims to the extent of benefits to which the employee would have been entitled if the Employer had made the required contributions, and for all contributions and liquidated damages due thereunder, plus all reasonable legal fees incurred by the Trust Funds in enforcing the payment thereof.

It shall be considered a violation of this Agreement for any Employer to fail to pay or comply with any provisions of this Article III, or any rule or regulation made by the Trustees administering the aforesaid Trusts and Funds. In the event that the Union receives written notice from the Trustees of any of said Trusts and Funds that the Employer has failed to pay in full any sum due said Trustees and Funds under this Article, and that such failure has continued for forty-eight (48) hours after an Employer has received written notice thereof, the Union may withdraw employees from such Employer's employment until all sums due from the Employer under this Article have been paid in full. This remedy shall be in addition to all other remedies available to the Union and the Trustees, and may be exercised by the Union, anything in this collective bargaining Agreement to the contrary notwithstanding. Such withdrawal of employees to collect contributions to said Trusts and Funds shall be not be considered a violation of this Agreement on the part of the union and it shall not be considered a matter subject to resolution under the Settlement of Disputes Provision of this Agreement. If employees are withdrawn from any Employer under the Section, the employees who are affected by such stoppage of work shall be paid for lost time up to sixteen (16) hours provided that two (2) days notice of the intention to remove employees from a job is given to the Employer by the Union by registered or certified mail.

(c) <u>Audits</u>. The Employer shall furnish to any of the

8

aforementioned Trusts and Funds or any agent of the Union, upon request, such information and reports as they may require in the performance of their duties. The Trustees of each of the Funds named above, or the Union, or any authorized agent of their, shall have the right at all reasonable times during business hours to enter upon the premises of the Employer and to examine and copy such books, records, papers, weekly payroll journals, individual earning records, quarterly tax returns and reports of the Employer as may be necessary to permit the Trustees of the Union to determine whether Employer is fully complying with the provisions regarding Employer contributions to each of the Trusts and Funds named herein. Any Employer found delinquent through regular or special audit ordered by the Trustees shall be charged the full cost of such audit.

(d)  Enforcement. The trustees and the Union are hereby given the power and the authority to institute whatever legal proceedings may be necessary to enforce compliance with the provisions of this Article. Legal and auditing fees incurred by any of the aforementioned Trusts and the Union in enforcing compliance with this Article shall be charged to the delinquent Employer.

(e)  Covered Work. The fringe benefit contributions provided in paragraph 3.1, 3.2 and 3.3 above, are payable for covered work performed, within or outside of the geographical area described in paragraph 1.2 above.

## ARTICLE IV
## DUES CHECK OFF

The Employer shall deduct from the wages of each employee who has signed a check-off authorization form to the Union (or to any agencies designated by said Union for the collection of such money), the sum for each hour paid which the Union has specified, or specified from time to time and so advises the Employer in writing, as the portion of each employee's dues subject to check-off, made payable to the Union, Illinois District Council No. 1, its International Union, or any other affiliate of its International Union, as designated from time to time by the Union. The sums transmitted shall be accompanied by a statement, in form specified by the Union, reporting the name of such person whose dues are being paid and the number of hours each employee has been paid.

## ARTICLE V
## HOURS OF LABOR
## AND
## PAYMENT OF WAGES

5.1  Eight continuous hours shall constitute a day's work, between the hours of 7:00 a.m. and 3:30 p.m. or 8:00 a.m. to 4:30 p.m. shall be a regular work day. The work day shall include a one-half hour lunch period and a fifteen minute morning coffee break. Quitting time shall be eight and one-half hours after the starting time, which shall include 15 minute clean-up time. A work week shall consist of five days, Monday through Friday, inclusive.

5.2  Wages for any work in excess of eight hours in any one day, Monday through Friday, (excluding Holidays) shall be paid at the rate of double time, with the following exceptions: Work required Monday through Friday from either 3:30 p.m. or 4:30 p.m. to 6:30 p.m. or 7:30 p.m., shall be paid at time and a half only in situations such as where a mechanic is in the process of installing mud walls or mud floors or to complete a job so that the mechanic or crew may start a new job on the following day and only when the Union is notified (when possible). The use of this clause is not intended to be abused or used for any other purpose other than that outlined above. Wages for any work from 3:30 p.m. (in case of an advanced starting time) or 4:30 p.m. (in case of a regular starting time) to 7:00 a.m. or 8:00 a.m. respectively, Monday through Friday, shall be paid at the rate of double time. Work between the hours of 7:00 a.m. or 8:00 a.m. and 3:30 p.m. or 4:30 p.m. on Saturday shall be paid at the rate of time and one-half. Work between the hours of 3:30 p.m. or 4:30 p.m. on Saturday through 7:00 a.m. or 8:00 a.m. on Monday shall be paid at the rate of double time. All work on legal holidays shall be paid at the rate of double time. Any member of Local #67 who works during a overtime period, and then continues to work into a normal straight time period will receive pay at overtime rate during the overtime period and straight time during straight time period. The Employer shall notify Local 67 of all overtime. All paychecks shall include a pay stub itemizing all deductions from

9   10

gross wages, including tax deductions, union dues, and annuity contributions.

5.3  **Shift Work.**  A pre-job conference shall take place between the Business Manager and Employer regarding any shift work at least seventy-two hours prior to commencement of the work.

When approved by the Union and when work is carried on two (2) or more shifts, the second shift shall receive eight (8) hours pay for seven and one-half (7 1/2) hours' work, plus a paid 1/2-hour lunch period. The third shift shall receive nine (9) hours' pay for eight (8) hours' work, plus a paid 1/2-hour lunch period.

No shift work shall be allowed unless the job be of at least five (5) business days' continuous duration. A job must start as a shift job and end as a shift job.

Any work done in excess of eight (8) hours on the first and in excess of seven and one-half (7 1/2) hours on the second shift and in excess of eight (8) hours on the third shift shall be paid wages at the rate of double time.

No employee shall work more than one shift in any twenty-four hour period.

Monday through Friday:                                              Wages

    Shift #1    8:00 a.m. to 4:30 p.m. ............................ 8 hours
    Shift #2    4:30 p.m. to Midnight ............................. 8 hours
    Shift #3    Midnight to 8:00 a.m. ............................. 9 hours

Saturdays, all shifts shall be paid at time and one-half.

Sundays and Holidays, all shifts to be paid at double-time.

5.4  **Saturday Make-UP Day**  On exterior work requiring three or more Tile Layers, in the event men assigned to the job are caused loss of time by weather conditions only, and have less than 24 hours pay accumulated for the week shall be allowed to work Saturday at straight time pay if they so agree and Local 67 is notified ahead of time. In the event the contractor wishes to add more Tile Layers than those who have worked on the job, the rate of pay shall be at the overtime rate of time and one-half for all. Sunday shall not be allowed as a make-up day. No disciplinary action shall be taken against any employee not working a make-up day.

5.5  **Legal Holiday** shall consist of the following: New Years Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, and Christmas. It shall be understood that the holidays enumerated shall be celebrated according to the Federal designation.

5.6  Any Tile Layer transferring from one job to another for the same Employer during a scheduled working day shall do so on the Employer's time.

5.7  Employees who have worked thirteen (13) consecutive days shall be required to take the fourteenth day off.

### ARTICLE VI
### PAYDAY

6.1  Work week to be paid on the basis of all hours earned between Sunday and Saturday of each week, including all overtime or premium time hours earned up to midnight Saturday. Payment may be made by check mailed to home of employee postmarked no later than Wednesday, postage prepaid. Employer must furnish timecards. Time must be reported not later than Tuesday noon in order to be paid wages earned for previous week. In the event timecard is late, wages shall be paid the following week.

6.2  When an employee is laid off or quits, he may report hours worked by telephone, to be followed by timecards. The employer shall issue the paycheck by the following Wednesday.

6.3  In the event the Employer fails to notify the Union by noon of day of discharge and employee cannot find employment on the following work day, the Employer shall pay said employee an amount equal to four (4) hours' pay, to be paid on the final paycheck.

11       12

6.4   When an employee is fired, he must report his time and shall receive immediate payment for wages due.

6.5   When an employee is laid off or fired and is working for a contractor who is out of our jurisdiction, he shall call in his time and have a check sent to him by express mail.

### ARTICLE VII
### TRAVEL AND PARKING ALLOWANCE

7.1   General Expense. Employer shall pay an allowance to all employees in the amount of $3.50 per day for each day, or part thereof for work performed within a 90-mile radius of Chicago (State and Madison Streets) and $4.00 per day general expense starting in the 3rd year of this agreement. For work outside that zone, Employer shall in addition to said allowance pay current IRS standard allowance for each mile traveled commencing with the 90 mile radius from State and Madison Streets in Chicago, to be revised yearly starting June 1, 2000.

7.2   Out-of-State Pay Allowance. Employees who perform work outside the State of Illinois, except a portion of Indiana that would be annexed into the (8) hour zone, East to Route 65, South to Route 30, shall receive shall receive nine (9) hours pay for eight (8) hours work as out-of-town work as defined below.

7.3   Out-of-Town Work Allowance. Out-of-Town work is described as work in excess of 90 miles from Chicago (State and Madison Streets). Employees assigned to such work shall receive the following allowances for the entire period of the assignment.

(a) $35.00 per day for board;
(b) Lodging expenses at the prevailing double occupancy room rate;
(c) Transportation expenses equivalent to the air fare;
(d) Round trip transportation expense every four weeks of the assignment.
(e) Any member working in excess of ninety (90) miles of State & Madison in Chicago, Illinois, will receive nine (9) hours pay for eight (8) hour work provided he or she is commuting the distance and not staying over. (The allowances provided in paragraphs 7.1 and 7.2 above do not apply for out-of-town work)

7.4   Downtown Chicago Parking Fees. (1ST YEAR OF AGREEEMENT ONLY), Employer pays parking for the first and last day of work in the first year of this agreement and a,b,c and d listed below shall apply, however starting in the 2nd year of this agreement any parking paid within our entire geographic jurisdiction will be reimbursed up to $12.00 per day with receipt. Also, it is understood that general expense will not be paid starting in the 2nd year of this agreement if parking is being paid. Additionally starting in the 2nd year of this agreement there will be no reference to gang boxes or secure storage areas.

(a) If no gang box or secure storage area is provided, Employer pays the fee at the closest parking facility for each day of work.
(b) If a gang box or secure storage area is provided, no parking fee is payable except for the first and last day, but Employer shall pay the fee whenever employee is transferred on order of Employer to another job and tools are required to be transported.
(c) Receipts must be submitted to receive payment.
(d) Current general expense is paid above and beyond any parking being paid in 1st year of this agreement only.

7.5   When a Local 67 member goes to work in another local's jurisdiction for a contractor under that local's jurisdiction, the member is entitled to that local wage package only.

### ARTICLE VIII
### WORKING RULES

8.1   Tile Layers reporting for work upon order expressed by Employer and not put to work for any reason except weather conditions, fire, accident or other unavoidable causes shall receive two (2) hours pay for lost time plus parking or general expense.

13  14

8.2 Tile Layers reporting on job where conditions are such that he cannot proceed to install tile shall contact his Employer as soon as possible, further instructions to be given by Employer.

8.3 All Employers shall furnish to the Tile Layers proper working instructions in writing, covering all work to be done on any and all jobs. These instructions shall give name of room, or rooms that work is to be done in, size, grade and kind of tile to be used, method of installations and on a complicated piece of work, a setting plan shall accompany working instructions.

8.4 All tile work shall be installed in accordance with the standards of installations accepted by the Joint Arbitration Board.

8.5 Tile Layers reporting to shop or office of Employer for orders at the beginning of any scheduled working day shall be paid commencing with the time he reports in accordance with the Agreement.

8.6 Piece work, lump work, bargaining or contracting for certain amounts of work to be done in a designated time, or any subterfuge to evade the intent of this paragraph, are all prohibited.

8.7 All installations regardless of the quality or kind of tile or method of installation shall be made in a first class manner. Whenever a Tile Layer shall do faulty work, it shall be the duty of the Business Representative to investigate with a representative of the Employer within 48 hours. The Employer shall have forty-eight (48) hours to file said complaint with the Union after Employer received complaint. If the Business Representative finds that the complaint is justified, he shall order the Tile Layer to repair said work on his own time within ten (10) working days. The Employer shall furnish all replacement materials.

8.8 The employees are required to carry all hand tools to perform their trade. Employer shall supply employees with all the other tools required to perform the assigned work, including but not limited to: All electrical power tools, electrical extension cords in excess of two fifty-foot cords, soaking tubs, straight edges, laths, mixing boxes, mortar boards, kneeling boards, stands, hand operated table cutters in excess of 8" tile size, and all cutting wheels. The following is a list of tools and equipment which could be used by a Ceramic Tile Layer, however, if owned by the Employer and hauled by the tile layer, the tile layer will receive $10.00 per day compensation. Hauling will be at the discretion of the tile layer.

1. Wet Saw
2. Straight Edges-over 8' or does not fit in car
3. Hand truck
4. Wheelbarrow
5. Scaffolding and ladders
6. Tarps-insulated
7. Mortar boards and stands
8. Kneeling boards-more than four boards
9. Laser equipment-requiring a tri-pod
10. Water barrels
11. Hoses-in excess of 150'
12. Shop owned racks
13. Mixing boxes
14. List of equipment that does not fit in truck or trunk properly and safely.

**ANY MATERIALS DELIVERED BY THE TILE LAYER FOR THE EMPLOYER ALSO FALL UNDER THIS CATEGORY.**

Employer may require employee to sign for tools and equipment furnished by Employer. Tools supplied by contractor shall be signed out by the Tile Layer. He shall be responsible for monetary compensation (Pro-Rated) if tool is lost. Tile Layers shall not be responsible in cases of thievery. A police report must support the claim.

8.9 Hauling Shop Tools and Equipment. If a tile layer hauls large tools in his personal vehicle, he shall receive $10.00 per day hauling charge in addition to general expense.

8.10 Clothing Expense Allowance. Contractor will provide coveralls or dollar amount per day for pants, shoes, etc., when member is working with tar-based materials, Alcor, and Furnan.

15                                                                 16

8.11  **Out of Town Contractors**.  If a contractor has his or her primary office within the jurisdiction of the Union, he shall be classified as a local contractor. Any firm whose office or place of business is located outside of the firm's jurisdiction, may, whenever they are doing work within the Union's jurisdiction, bring in one (1) non-resident journeyperson, but after the first 8 hour day, Monday-Friday, 7:00 am to 3:30 pm, must employ at least one (1) journeyperson from the Union until the end of the job. An out of town contractor must hire Local #67 members at the start of any overtime job. No first day privilege is granted on overtime work. The non-resident journeyperson shall furnish evidence to the Business Representative that he/she is receiving the prevailing wages that are being paid under this contract. Non-resident journeypersons must report to the Union office the morning the job starts, before he/she commences work on the job. Members of other tile local unions, when working within the jurisdiction of this local Union, must furnish to this Union the weekly job site report form furnished by this Union to be received by the Union no later than the Monday following the previous week's work. These weekly reports must confirm the monthly contractor reports submitted to the Chicago Tile Institute. Failure to comply with this provision will subject the offender to rejection of his/her right to work in this jurisdiction.

8.12  Union reserves the right to request of Employer that it complete and submit weekly report forms on all employees working within the trade and geographical jurisdiction of the Union. Such requests for reporting will only be demanded upon a reasonable showing that such Employer is not abiding by the terms and conditions of this Agreement. The reporting forms shall be supplied by the Union. Employer agrees to complete them for the period requested by the Union.

8.13  **Safety Meetings** shall be limited to one (1) hour per meeting with no more than four (4) meetings per year. All such meetings shall be during regular business hours with employee receiving regular compensation. Safety meetings between the Union and Management shall meet at least once (1) per calendar year on a Saturday.

17

## ARTICLE IX
## FOREMAN

9.1  A foreman shall be a journeyperson Tile Layer. Whenever two (2) Tile Layers are employed on any one job, one (1) shall be selected by the Employer as a foreman. Whenever five (5) or more Tile Layers are employed on any one job, the foreman shall receive $2.00 per hour above the regular Tile Layers' wages. His/her duties are to keep daily work reports on forms supplied by the Employer. Reports shall state day, date, hours worked and areas assigned to Tile Layers. He shall have the right to order Tile Layers and/or helpers to leave the job.

9.2  It is further agreed that the Business Representative of the Union or the authorized agent of the Trustees of the Chicago Tile Institute shall be allowed to visit the job during normal working hours to interview foremen, contractors, superintendents or men at work. Discretion shall be used by Business Manager as to not to interfere with progress of work. The Union shall have the right to appoint a Steward from the shop that has the work and he is to be responsible for the tile trade only.

## ARTICLE X
## UNION STEWARD

10.1  The Business Representative of the Union shall appoint a job steward on each job who shall not be subject to discrimination for discharging his duties and shall be the last remaining employee working at the job site, other than the foreman, providing he can perform the work remaining to be performed.

10.2  The Union Steward shall see that every man on the job is in good standing with this Union or see the proper credentials which will permit him to work on the job.

10.3  The Union Steward shall keep the Business Representative informed of the needs of the Employer so that he may supply additional workers when required.

10.4  The Union Steward shall keep a record of the men

18

employed, laid off, or discharged and report on the proper forms to the Union at each regular meeting.

10.5  The Union Steward shall address all grievances on the job and attempt to resolve them. In the event the grievance cannot be resolved by the Union Steward, he shall notify the Business Representative.

10.6  The Union Steward shall see that the provisions of this Agreement are complied with at all times and shall report any violations to the Business Representative.

10.7  The Union Steward shall examine all working dues books or "permits" when a tile layer begins work and weekly thereafter.

10.8  When an employee is discharged, the Union Steward shall be given reasons for the discharge by the Employer and/or Foreman prior to the discharge.

10.9  When twenty-five (25) or more employees covered by this Agreement are employed on a job site, the Union Steward shall not use his tools.

10.10  The Union Steward shall see that any injured employee shall receive proper care at the expense of the Employer and shall collect all relevant facts regarding the injury. The Union Steward shall report every injury to the Business Representative and shall accompany the injured employee to the hospital or his home without loss of pay.

10.11  A Union Steward shall be appointed once there are four (4) tile layers on a job.

10.12  A Union Steward may be required on any job. The Union reserves the right to appoint a steward on any job.

### ARTICLE XI
### APPRENTICES

11.1  In order to maintain a sufficient number of skilled mechanics, the necessity for employment of apprentices is hereby recognized and the employment and proper training for as many apprentices as is reasonable and practicable shall be encouraged by all parties to this Agreement.

11.2  Apprentices are indentured to the Board of Trustees of the Apprenticeship program and the International Masonry Institute hence are under the complete control and jurisdiction of those Boards of Trustees. An Employer shall not discharge or refer apprentices to another Employer without first obtaining permission from the said Board of Trustees.

11.3  Employer may employ a maximum of one (1) apprentice for each three (3) journeymen when apprentices are available. This ratio shall be based on current work force and not on annual or average work force. The ratio of any one job shall never be more than one (1) apprentice for one (1) journeyperson.

### ARTICLE XII
### BONDS

12.1  Each Employer shall furnish the Union, not later than the 5th day following the execution of this Agreement, a Surety Bond or a Letter of Credit in the principal sum as shown below. Such Bond shall be written by an insurance carrier licensed to do business in the State of Illinois. Obligees on the Surety Bond shall be as follows:

Chicago Tile Institute Welfare Fund;
Chicago Tile Institute Pension Fund;
Chicago Tile Institute Promotional Fund;
Bricklayers and Trowel Trades International Pension Fund;
Illinois District Council #1 Annuity Fund;
Ceramic Tile Layers and Terrazzo Workers Union
Local No. 67 Apprentice Fund;
Chicago Tile Layers Union Local 67;

The principal amount of said Surety Bond shall be for Local #67 Tile Layers and Local #25 Tile Finishers:

| | |
|---|---|
| One (1) to four (4) employees | $ 12,000.00 |
| Five (5) to ten (10) employees | 24,000.00 |
| Eleven (11) to fifteen (15) employees | 34,500.00 |
| Sixteen (16) or more employees | 50,000.00 |

12.2 Any Employer who fails to have sufficient funds on deposit to meet all pay checks issued to employees covered by this Agreement shall be subject to a penalty fixed by the Joint Arbitration Board. Said penalty shall be to the extent of a sum not less than the expense incurred in collecting the amounts due on wages, fringe benefits and dues, and the Employer shall also be deprived of the right to pay by check. In case of a forfeiture of his Surety Bond, he shall be required to execute a new surety Bond acceptable to the Union.

12.3 Employer agrees to elect to be bound by the provisions of the ILLINOIS WORKMEN'S COMPENSATION ACT and shall furnish a certificate of such insurance to the Union.

12.4 Employers not otherwise required to pay contributions under the ILLINOIS UNEMPLOYMENT COMPENSATION ACT and irrespective of the number of employees, shall voluntarily elect to become subject to said act and make the necessary payments thereunder. Employer shall furnish Union with the number assigned to him by the State of Illinois.

12.5 Employer shall give notice to the Union in writing via certified or registered mail not later than ten (10) days after the occurrence of any of the following events relating to the Employer, occurring after the date hereof:
Formation of Partnerships;
Termination of Business;
Change in names commonly used in business operation;
Change in form of business organization;
Incorporation of business;
Dissolution of Corporation or Partnership;
Filing Under US Bankruptcy Code

21

12.6 This Agreement shall not be transferable either by action of Employer or by operation of law. In the event any Employer whether an individual, partnership or corporation covered by this Agreement, merges, consolidates or transfers a controlling interest in his, their or its business, this Agreement may be canceled to such Employer by the Union.

12.7 All contractors must have a letter on file in the Union office listing the names of all persons who have authorization to act in the capacity of employing and terminating workers for his firm. The Union must be notified before noon by the Employer and the employee by 3:30 p.m. on the same day of termination of employment.

12.8 The provisions of Section 1.2 to the contrary notwithstanding, Employer agrees that employees who are assigned to work outside the geographical area of this Agreement shall work under the provisions of this Agreement, and wages shall be the highest wage rate to prevail.

### ARTICLE XIII
### SAFETY

13.1 No Tile Layer shall be required to work under conditions that are in violation of O.S.H.A. Employees shall become acquainted with O.S.H.A. requirements for the ceramic tile trade.

13.2 No Tile Layers shall be required to walk up more than eight (8) flights of stairs.

13.3 Any tile layer working with a diamond cutting saw shall have water applied to the cutting at all times. Dry cutting is prohibited.

### ARTICLE XIV
### HIRING

The Union does not operate an exclusive Hiring Hall. Employers are free to hire union ceramic tile layers from any source. Employees may seek and obtain employment as they wish without having to register on any Union availability list or get Union permission. The Employer

22

and the Tile Layer are required to call the Union office and report new employment within 24 hours.

### ARTICLE XV
### MISCELLANEOUS PROVISIONS

15.1 Employer agrees that by appointment, and within forty-eight (48) hours of notice, he or his appointed agent will meet, during normal working hours at Employer's office or shop, with anyone designated by the Business Manager of the Union for the purpose of determining whether the provisions of this Agreement are being fulfilled.

15.2 Employer agrees that all unit work will be performed by unit employees.

15.3 The Tile Layers shall not be required to pick up or deliver any tile or other materials related to their work.

### ARTICLE XVI
### SAVINGS CLAUSE

Should any part of, or any provisions herein contained be rendered or declared invalid by reason of any existing or subsequently enacted legislation, or by any decree of a court of competent jurisdiction, such invalidation of such part or portion of this Agreement shall not invalidate the remaining portions hereof. Upon such invalidation, the parties hereto agree to immediately meet to re-negotiate such parts of provisions affected. The remaining parts or provisions shall remain in full force and effect.

### ARTICLE XVII
### SUBCONTRACTING

17.1 The Employer agrees not to sublet, assign or transfer any work covered by this Agreement to be performed at the site of a construction project to any person, firm or corporation, except where the subcontractor subscribes and agrees in writing to be bound by the full terms of this Agreement and complies will all of the terms and conditions of this Agreement.

23

17.2 All charges of violation of this Article shall be considered as a dispute and shall be processed in accordance with the provisions of this Agreement covering the procedures for the handling of disputes and the final and binding arbitration of disputes.

### ARTICLE XVIII
### PRESERVATION OF WORK

18.1 In order to protect and preserve for the employees covered by this Agreement, all work heretofore performed by them, and in order to prevent any device or subterfuge to avoid the protection and preservation of such work, it is hereby agreed as follows: If and when the Employer shall perform any work of the type covered by this Agreement at the site of a construction project, under its own name or under the name of another, as a corporation, company, partnership, or any other business entity, including a joint venture, wherein the Employer (including its officers, directors, owners, partners or stockholders) exercise either directly or indirectly (such as through family members) and significant degree of ownership, management or control, the terms and conditions of this Agreement shall be applicable to such work.

18.2 All charges of violations of this Article shall be considered as a dispute under this Agreement and shall be processed in accordance with the procedures for the handling of grievances and the final binding resolution of disputes, as provided in Article XX of this Agreement. As a remedy for violations of this Section, the arbitrator (or arbitration body) provided for in Article XX is empowered, at the request of the Union, to require an Employer to (a) pay to affected employees covered by this Agreement, including registered applicants for employment, the equivalent of wages lost by such employees as a result of the violations, and (2) pay into the affected Joint Trust Funds established under this Agreement, any delinquent contributions to such Funds which have resulted from the violations including such liquidated damages and interest as may be prescribed by the Trustees or by this Agreement or by law. Provisions for this remedy herein does not make such remedy the exclusive remedy available to the Union for violation of this Section; nor does it make the same or other remedies unavailable to the Union for violations of other sections or articles of this Agreement.

24

18.3 If, as a result of violation of this Article, it is necessary for the Union and/or the Trustees of the Joint Trust Funds to institute court action to enforce an award rendered in accordance with the paragraph above, or to defend an action which seeks to vacate such award, the Employer shall pay accountant and Attorneys fees incurred by the Union and/or the Fund Trustees, plus costs of the litigation, which have resulted from the bringing of such court action.

### ARTICLE XIX
### NON-DISCRIMINATION

Neither party to this Agreement shall discriminate against any employee or any Employer covered by this Agreement by reason of said person's gender, race, color, religious affiliation, national origin or any other basis prohibited by law. The provisions of this Agreement relating to Settlement of Disputes shall apply to any charge made by any party of a violation of this provision.

### ARTICLE XX
### SUBLETTING

It shall be the duty of all persons letting or subletting ceramic tile installation to ascertain that the contractor or sub-contractor is reliable, financially responsible, and will comply with the provisions of this Agreement. All persons letting or subletting tile installation work shall assume the responsibility for payment of all fringe benefits, in the event his contractor or sub-contractor fails in making payments or contributions; provided, however, that the Union notifies the person letting or subletting said work, in writing, of any such delinquency within 30 days of the delinquency and provided also that to help assist the Union, the person letting or subletting such work shall notify the Union of the contractor or sub-contractor to whom the work was sublet and the name and location of the project.

### ARTICLE XXI
### MOST FAVORED NATIONS CLAUSE

If during the term of this Agreement, the Union enters into a collective bargaining agreement with another construction industry

25

Employer or group of Employers employing ceramic tile layers and apprentices which provides for wage rates or economic fringe benefits or work rules more favorable to such Employer than the corresponding provisions of this Agreement, the parties to this Agreement will meet promptly to draft an amendment to this Agreement incorporating such more favorable provisions, except however, that the provisions hereof shall not apply to more favorable wage rates, contract terms or work rules granted to Employers in the Ceramic Tile Industry or to public sector Employers.

### ARTICLE XXII
### SETTLEMENT OF DISPUTES

22.1 The following provisions shall apply to the settlement of disputes: (Except for matters involving payment of welfare, pension and apprenticeship training contributions under Section 3.1, 3.2 and 3.3 above).

(a) In case a dispute shall arise between Employer and the Union, including but not limited to jurisdictional disputes, the violation, interpretation and application of this Agreement, and the Employer and the Union cannot resolve the dispute within 72 hours after it arises, then the dispute shall be referred to the Joint Arbitration Board for the consideration in the manner hereinafter provided:

(b) There shall be a Joint Arbitration Board consisting of three (3) representatives of the Union and three (3) representatives of the Ceramic Tile Contractors Association. A quorum of the Joint Arbitration Board shall be two members from the Union and two members from the Association, but neither side shall cast more total ballots than the other. A decision shall require a majority vote and any such decision shall be binding on both parties. If, no ruling is rendered by the Joint Arbitration Board within ten (10) days of the time the dispute was first referred to it, the Joint Arbitration Board shall be deemed to have failed to have reached a decision unless the parties to the dispute agree to an extension of time.

(c) In the event that a dispute has been referred to the Joint Arbitration Board and is either refused by the Board or no decision is reached by the Board within the time limits described above, either party may submit the dispute to binding arbitration by:

(i) Informing the other party of such

26

submission and requesting the American Arbitration Association to submit a panel of five (5) arbitrators available to hear and decide the issue. The party requesting such panel shall upon receipt of the five (5) names, strike one (1) name from the list and submit the remaining four (4) names to the other party, who shall strike one (1) additional name. The parties shall alternatively strike names thereafter until one remains, who shall be the arbitrator.

(ii) The parting requesting arbitration shall then assume the responsibility of procuring the services of the arbitrator in accordance with the procedures of the American Arbitration Association. The arbitrator shall thereafter hear and decide the issue as soon as possible, and shall submit his award in the case.

(d) If no agreement on the selection of an arbitrator is reached within ten (10) days after a panel is tendered by the American Arbitration Association, the American Arbitration Association shall designate an arbitrator to rule on the matter.

(e) Unless otherwise agreed to by the parties to the dispute, the arbitrator shall issue a written ruling after the dispute is submitted, and the arbitrator's decision and award in the case shall be final and binding upon the parties.

(f) Except as modified by the foregoing time limitations, the arbitration shall be conducted pursuant to the American Arbitration Association's Voluntary Labor Arbitration Rules, as amended. All expenses of the arbitration, except expenses of legal counsel shall be borne equally by the contractor and the Union which are parties to the dispute.

27

(g) When any matter is in dispute and has been referred to conciliation or arbitration for adjustment, the provisions and conditions prevailing prior to the time such matter arose shall not be changed or abrogated.

### ARTICLE XXIII
### COMPENSATION OF JOINT ARBITRATION MEMBERS

A. Members would be compensated for each meeting attended. Recommended dollar amount $90.00 per meeting each.

B. Joint Board would set up checking account through union's bank. Two signatures required, one management and one labor. Suggest union Business Manager or Secretary-Treasurer and management member with most time on Joint Board.

C. Monies paid by employer found guilty of violating contract would go to appropriated funds. Union would receive dues or initiation fees owed. But all fines would go to Joint Board's checking account.

D. Whenever Joint Board checking account had adequate funds to cover meeting costs plus reserve, Joint Board would make occasional donations to charities such as R.E. Shepherd Scholarship Fund.

E. Joint Board would conduct a short financial meeting once per fiscal year, meeting to be held just prior to regular normal Joint Board meeting. So two meetings in one would actually take place once a year. Findings to be read by Local #67 Secretary-Treasurer.

F. Joint Board would have the power to increase meeting expense each year if funds are available.

28

IN WITNESS WHEREOF, the parties hereto set their hands and seals as of the date first above written:

| The Contractors Association of Chicago | Ceramic Tile Layers Local #67 BAC |
|---|---|
| George Lockerbie _____ | Frank O'Lone _Frank W. O'Lone_ |
| Brad Trostrud _____ | Robert Brown _Robert Brown_ |
| Nancy Bourbon _____ | Edward Juergensen _Edward Juergensen_ |

DATE: _ALL SIGNATURES: APRIL 19, 2000_

DATED JUNE 1, 2000

29

RECEIVED MAY 19 2005

FAX NO.: ACME TILE CO INC 223400 0067 IL

CVGP 2 +3

**THIS AGREEMENT MADE AND ENTERED INTO BY AND BETWEEN**

**MEMORANDUM**

Name of Contractor _Acme Tile Co, Inc_ Address _Po Box 627 South Pekin, Illinois_

FEIN # _37-1364381_

Phone _309-348-1543_

herein called the "EMPLOYER," and Ceramic Tile Layers, Ceramic Tile Finishers, Terrazzo Workers, Terrazzo Finishers & Granite Cutters Union Local No. 67 of the International Union of Bricklayers and Allied Craftsmen, AFL-CIO, herein called the "UNION."

In consideration of the mutual promises made to each other, the parties hereby agree as follows:

1. The EMPLOYER hereby recognizes the UNION as the sole and exclusive bargaining representative for and on behalf of employees of the EMPLOYER who are now bargaining representative within the territorial and occupational jurisdiction of the UNION.

2. The parties adopt and the EMPLOYER agrees to be bound by the terms and provisions of a collective bargaining agreement dated JUNE 1, 2000, between the UNION and the TILE CONTRACTORS ASSOCIATION OF CHICAGO (Master Agreement), a copy of which agreement is attached hereto and made a part hereof and the receipt of which is hereby acknowledged (Master Agreement) as aforesaid, unless written notice of termination or amendment by EMPLOYER.

3. This Memorandum of Agreement shall remain in effect until the expiration of Agreement adopted by reference, (Master Agreement) including any amendments or changes thereto. The parties further agree that this Memorandum of Agreement shall remain in existing Agreement adopted herein by reference (CHICAGO TILE CONTRACTORS ASSOCIATION CHICAGO - Master Agreement).

4. Either party desiring to amend or terminate this Memorandum Of Agreement shall notify the other in writing at least sixty (60) days prior to the expiration of the aforesaid successor Agreement entered into between the UNION and the aforesaid CERAMIC TILE CONTRACTORS ASSOCIATION OF CHICAGO.

5. The EMPLOYER agrees to be bound by and to comply with the terms and provisions of the Agreements and Declarations of Trust establishing the Chicago Tile Institute Pension Trust, Chicago Tile Institute Welfare Fund, Chicago Tile Institute Promotion Fund, Ceramic Tile Layers Apprenticeship Trust, Annuity Trust, Bricklayer and Trowel Trades International Pension Fund and International Masonry Institute as amended and as the same may hereafter be amended or restated from time to time, as though the same were incorporated herein. EMPLOYER agrees to make prompt payments to each of the above Funds incorporated in the Master Agreement and all successor agreements to which Employer becomes bound. The EMPLOYER hereby accepts and ratifies the appointment of the present Employer Trustees of the Funds and their Successor Employer Trustees as representative.

6. EMPLOYER agrees to furnish UNION with certificate covering liability under the Illinois Workers' Compensation Act and the Illinois Occupational Disease Act.

7. EMPLOYER agrees to furnish UNION with a surety bond to insure prompt payment of wages, health and welfare fund contributions, pension fund contributions, apprenticeship fund contributions and annuity fund contributions in amount and according to the provisions of the Master Agreement adopted by reference herein.

8. This agreement shall be operative during any period when the EMPLOYER is a member in good standing of the CERAMIC TILE CONTRACTORS ASSOCIATION OF CHICAGO.

IN WITNESS WHEREOF, the parties have executed this agreement dated this ___ day of _December_, 200_3_.

EMPLOYER: _Acme Tile Co, Inc_

(Sign) By: _Eugene Wynsen_

(Print) By: _Eugene Wynsen_

CERAMIC TILE LAYERS, CERAMIC TILE FINISHERS, TERRAZZO WORKERS, TERRAZZO FINISHERS & GRANITE CUTTERS UNION LOCAL NO. 67

(Sign) By: _[signature]_

(Print) By: _Edward Nuegensen_

#67IL